EDWARD FAJARDO, )
)
    Plaintiff, )
)
v. )          No. 2:25-cv-50-MJD
)
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

## MEMORANDUM AND ORDER

Plaintiff Edward Fajardo ("Plaintiff"), who is proceeding pro se, brought this action

pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner

of Social Security ("Commissioner") denying his application for supplemental security income

("SSI"). Each party has filed a brief seeking judgment in their favor pursuant to Rules 5, 6, and 7

of the Federal Rules of Civil Procedure Supplemental Rules for Social Security ("Supplemental

Rules") [Doc. 13; Doc. 15]. Plaintiff also filed a reply as allowed by Rule 8 of the Supplemental

Rules [Doc. 16-1]. This matter is ripe for the Court's review.

For the reasons stated below: (1) Plaintiff's request for relief will be **DENIED**, and (2) the

Commissioner's request that his final decision denying benefits be affirmed will be **GRANTED**.

## I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 8 ("Tr.")], Plaintiff filed his application for

SSI on April 6, 2020, alleging disability beginning July 1, 2015. Plaintiff's claim was denied

initially and on reconsideration at the agency level. Plaintiff requested a hearing before an

administrative law judge ("ALJ"), which was conducted on September 12, 2023, in Kingsport,

Tennessee. Plaintiff represented himself during the hearing. On October 9, 2023, the ALJ found

Plaintiff had not been under a disability as defined in the Social Security Act at any time between the date his SSI application was filed (April 6, 2020) and the date of the ALJ's decision (December 9, 2023).[1] The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born January 26, 1980, making him 40 years old on the date his SSI application was filed, which is considered a "younger person." 20 C.F.R. § 416.963. He has at least a high school education and can communicate in English. He has past relevant work as a cab driver, which is classified in the Dictionary of Occupational Titles ("DOT") as a semi-skilled job, generally performed at the medium exertional level (Tr. 19). He also has past relevant work for the Beard Construction Group, LLC, which the ALJ noted was "presumably in web design." (*Tr. 19*). However, during the administrative hearing, the Vocational Expert ("VE") did not classify this job by SVP (Specific Vocational Preparation) or exertional level, and the ALJ did not consider whether Plaintiff could perform this job when determining whether Plaintiff was entitled to benefits (*Tr. 19*).

### B.     Medical Records

In his May 2020 Adult Disability Report, Plaintiff alleged disability due to "back pain" and "hip pain." (Tr. 292). While there is no need to summarize all the medical records herein, the relevant records have been reviewed.

---

[1] SSI is not payable until the "month following the month" a claimant's application is filed. 20 C.F.R. § 416.335.

### C.     Hearing Testimony

At the hearing held September 12, 2023, Plaintiff and the VE testified. The record contains a transcript of the hearing, which the Court has reviewed (Tr. 68–92). At the beginning of the hearing, the ALJ told Plaintiff he would postpone the hearing to allow Plaintiff time to find an attorney or other qualified representative to represent him, if Plaintiff so desired (Tr. 72–73). Plaintiff declined a continuance and indicated he would proceed without representation (*Tr. 72– 73*). As mentioned, he is proceeding pro se in these federal court proceedings, as well.

## III.     ELIGIBILITY AND THE ALJ'S FINDINGS

### A.     Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The five-step process provides:

1)  If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—*i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).

### B. The ALJ's Findings

At step one of the five-step process, the ALJ found that, other than for a period of time in 2022, Plaintiff had not engaged in any substantial gainful activity since April 6, 2020, the date he filed his application for SSI benefits.[2] At step two, the ALJ found Plaintiff had degenerative disc disease, and that this condition was a severe, medically determinable impairment, as defined in 20 C.F.R. § 416.920(c). The ALJ noted Plaintiff had mild depressive disorder, and that this condition

---

[2] Specifically, the ALJ found Plaintiff earned "a total amount of income of $44,650.00" in 2022, which amounts to substantial gainful activity for SSI purposes (Tr. 12). The ALJ therefore found Plaintiff ineligible for benefits at step one for the year 2022. As part of his appeal to this Court, Plaintiff attaches proof from the SSA indicating that his 2022 income, at least for SSA and Medicaid purposes, was actually $0 [Doc. 13-1]. The Court addresses Plaintiff's arguments and the ALJ's findings regarding Plaintiff's 2022 income, or lack thereof, later in this opinion.

4

was a medically determinable impairment. However, the ALJ found it did "not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities," and was therefore considered "nonsevere." (Tr. 13). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with the following qualifications/additional limitations:

- He can lift, carry, push, and/or pull up to 20 pounds occasionally and 10 pounds frequently.

- In an eight-hour workday with normal breaks, he can sit for up to six hours, and he can stand and/or walk for up to six hours.

- He is limited to no more than occasional crouching, but he can perform all other postural activities frequently.

- He cannot experience concentrated exposure to occupational hazards, such as unprotected heights and moving machinery.

- He cannot climb ladders, ropes, or scaffolds.

- He requires a sit/stand option, defined as an individual who can concentrate and remain on task working for 30 minutes and then break posture to sit or stand and then resume working, repeatedly throughout the workday. This limitation would not include leaving his workstation.

(Tr. 14). At step four, the ALJ found a person with this RFC could not perform any past relevant work. At step five, however, the ALJ found there were occupations with jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC, including as a cashier II, a small products assembler, and a plastic hospital products assembler (Tr. 20).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the date he filed his SSI application (April 6, 2020) and the date the ALJ issued his decision (October 9, 2023).

## IV.     ANALYSIS

Plaintiff asserts a number of errors with the ALJ's decision, pursuant to both sentence four and sentence six of 42 U.S.C. § 405(g). Specifically, Plaintiff argues:

1.     The ALJ erred in finding Plaintiff engaged in substantial gainful activity in 2022, contrary to new documentation from the [SSA] showing a review and correction of earnings. Plaintiff did not engage in substantial gainful activity in 2022 as was alleged in [the ALJ's] denial.

2.     The ALJ failed to consider the full extent of Plaintiff's condition, as evidenced by a new severe osteoarthritis diagnosis received approximately one month after the denial (May 2025) as well as a diagnosis of severe sciatica as the plaintiff recalls being mentioned by a doctor but plaintiff is unable to obtain documentation prior to the deadline set for submitting brief. Plaintiff was only able to obtain partial documentation of nerve conduction test record.

3.     The ALJ did not adequately account for Plaintiff's testimony regarding the need to lie down daily due to pain, being capable of not more than 3 hours of sitting/maintaining the upright position cumulatively on a good day in terms of pain levels, and depending on the degree of reclining that the seat offers, a limitation unsupported by available job accommodations.

4.     The ALJ improperly evaluated Plaintiff's credibility concerning pain and functional limitations.

5.     The ALJ relied on an incomplete record, potentially including falsified or inaccurate medical reports, which misrepresented Plaintiff's condition.

6.     The denial was premature due to ongoing testing, treatment, and new medical developments (e.g., numerous emergency room visits, severe sciatica diagnosis, and physical therapy).

[Doc. 13 at Page ID # 707 (internal citations omitted)].

The Commissioner argues that substantial evidence supports the ALJ's decision, and that the post-decision evidence Plaintiff submits in this appeal does not justify remand.

### A.     Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner]

6

(a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the

Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B.      Sentence Six**

The Court will first address Plaintiff's arguments concerning the evidence that post-dates the ALJ's decision. This evidence includes: (1) Earnings Record Information from the SSA, dated September 2, 2025, showing that Plaintiff's earnings in 2022 were $0 for Medicare and Social Security Purposes [Doc. 13-1]; (2) medical records from BalladHealth, dated January 30, 2025, and June 26, 2025 [Doc. 13-2; Doc. 13-3]; and (3) alleged ongoing treatment that Plaintiff received in 2024 and 2025, for which Plaintiff has not submitted any records.

The Court cannot reverse the ALJ's decision based on evidence not presented to the ALJ. *Sutton v. Soc. Sec. Admin.*, No. 09-2288, 2011 WL 9482974, at *3 (6th Cir. Apr. 5, 2011) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695–96 (6th Cir. 1993)); *see also Curler v. Comm'r of Soc. Sec.*,

561 F. App'x 464, 472–73 (6th Cir. 2014) ("We have repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing that decision for substantial evidence under 42 U.S.C. § 405(g).") (citing *Foster*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). The Court can, however, remand a case for further consideration of a claim in light of new evidence, pursuant to sentence six of 42 U.S.C. § 405(g). Such remand "is appropriate 'only if the evidence is "new" and "material" and "good cause" is shown for the failure to present the evidence to the ALJ.'" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)); *see also* 42 U.S.C. § 405(g) ("The court may . . . remand the case to the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

"'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding . . . .'" *Schmiedebusch*, 536 F. App'x at 647 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is material if it creates "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). "'Good cause' is demonstrated by 'a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.'" *Johnson*, 535 F. App'x at 509 (quoting *Foster*, 279 F.3d at 357). "The claimant bears the burden of showing that all three requirements have been met in order to obtain a remand." *Sutton*, 2011 WL 9482974, at *3 (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009)).

The Court has reviewed Plaintiff's more recent medical records. During a January 30, 2025, appointment, Plaintiff reported that his "primary pain" on that day was in the "mid back," and that he had "been doing some home therapy" and "myofascial massage," both of which provided him with some relief [Doc. 13-2 at Page ID # 712]. The provider notes that Plaintiff "is very skeptical of any treatment [for] pain," and that Plaintiff "does not like pain medication or the idea of surgery." [*Id.*]. The provider further notes that he reviewed an MRI from March 5, 2024, and he agrees with the "radiology report" regarding the MRI [*id.* at Page ID # 714]. The report indicates that Plaintiff had "mild-to-moderate facet osteoarthritis bilaterally at T10–11," but he had normal intervertebral discs, normal alignment of his lumbar vertebra, and no facet edema [*id.*]. The report includes the following impressions: "1. Right paracentral extrusion L4–5 with mild right L5 nerve root compression. 2. Severe disc degeneration L5–S1 with only a slight disc bulge and no stenosis. 3. Minimal disc bulge L3–4." [*Id.* at Page ID # 714–15].

During his physical exam, Plaintiff had a nonantalgic and nonspastic gait, no tenderness to palpation and a good range of motion in his lumbar spine, a negative straight leg test, and otherwise normal results [*id.* at Page ID # 715]. His provider referred him to another doctor for "possible bilateral T10–11 facet injections," but noted that treatments for Plaintiff's issues were "not surgical in nature." [*Id.*]. Plaintiff was instructed to "return on [an] as needed basis." [*Id.*].

The next medical record Plaintiff submits is from June 2025. This record indicates Plaintiff was continuing to experience "chronic low back pain," and his provider recommended an "EMG/NCS to further evaluate before consider[ing] injections." [Doc. 13-3 at Page ID # 720].[3]

---

[3] Plaintiff writes that he received these records "one month after the denial." [Doc. 13 at Page ID # 707]. It is unclear what "denial" Plaintiff refers to here, as the ALJ's decision to deny benefits was issued on October 9, 2023, and the Appeals Council decision denying Plaintiff's request for review was issued on January 27, 2025 (Tr. 1).

Plaintiff does not provide any further post-decision medical records; however, he includes the following argument in his brief:

> Since the denial, Plaintiff has had multiple emergency room visits [2024, 2025] received a severe sciatica diagnosis (plaintiff unable to obtain this documentation, statement based on verbal mention during separate doctor visit with primary care provider) [September 2025], and is undergoing physical therapy [report due October 2025]. This ongoing treatment indicates the record is incomplete, supporting a sentence six remand under 42 U.S.C. § 405(g) for new and material evidence.

[Doc. 13 at Page ID # 709]. Plaintiff provides no additional details regarding these other medical appointments/visits or the treatments he allegedly received during 2024–25.

As the Commissioner argues, Plaintiff does not show how any of the more recent records reflect Plaintiff's condition as of October 9, 2023, the date the ALJ issued his decision. In his reply brief, Plaintiff makes the conclusory claim that the 2024–25 medical records and alleged treatments/visits/appointments "clarif[y] and confirm[] the severity of limitations during the adjudicated period (April 2020–October 2023)," but even Plaintiff concedes that "[o]steoarthritis is a progressive condition," and that his earlier imaging studies (cited in the ALJ's decision) "showed mild changes." [Doc. 16-1 at Page ID # 760].

"A claimant's condition and treatment subsequent to the date of decision is intrinsically irrelevant." *Haack v. Comm'r of Soc. Sec.*, No. 2:16-CV-14304, 2018 WL 4906605, at *2 (E.D. Mich. Mar. 20, 2018) (citing *Sizemore*, 865 F.2d at 712), *report and recommendation adopted*, 2018 WL 4658995 (E.D. Mich. Sept. 28, 2018); *see also Reynolds v. Berryhill,* No. 3:16-CV-458-JRG-CCS, 2017 WL 4172625, at *8 (E.D. Tenn. Aug. 31, 2017) (holding that imaging studies dating between three and six months after the ALJ's decision were not material), *report and recommendation adopted*, 2017 WL 4172144 (E.D. Tenn. Sept. 20, 2017). As pertinent to this case, "[e]vidence of a subsequent deterioration or change in condition after the administrative

11

hearing is deemed immaterial." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992); *see also Elms v. Comm'r of Soc. Sec.*, No. 16-10180, 2017 WL 4120097, at *8 (E.D. Mich. Sept. 18, 2017) (finding records that post-date the ALJ's decision by six months do not justify remand, noting: "Where a claimant believe[s] that his condition has worsened subsequent to the administrative determination, the remedy is to make a new application for benefits."). Rather, it is "well established that a sentence six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing." *Swain v. Comm'r of Soc. Sec.*, No. 5:21-CV-01542, 2022 WL 3088491, at *25 (N.D. Ohio July 8, 2022), *report and recommendation adopted*, 2022 WL 3083028 (N.D. Ohio Aug. 3, 2022); *accord Rollins v. Comm'r of Soc. Sec.*, No. 4:15-CV-01018, 2016 WL 2853864, at *17 (N.D. Ohio May 16, 2016) ("However, a sentence six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing." (citing *Walton v. Astrue*, 773 F. Supp. 2d 742, 753 (N.D. Ohio Jan. 18, 2011))).

Accordingly, the Court finds Plaintiff has not adequately demonstrated that the 2024–25 medical records and treatment/appointments/ER visits are material to the ALJ's decision to deny benefits during the relevant time period (April 6, 2020, through October 9, 2023).

The Earnings Record Information document [Doc. 13-1], which shows that Plaintiff had no earnings for Social Security or Medicare purposes in 2022, does not change the Court's analysis. Even assuming Plaintiff has shown "good cause" for his failure to present this document to the ALJ or the Appeals Council, which the Court does not find, the Court agrees with the Commissioner that the document does not show any harmful error that would compel or justify remand. The ALJ did indeed find Plaintiff ineligible for benefits at step one for the year 2022, based on the ALJ's belief that Plaintiff earned over $46,000 that year. Nevertheless, the ALJ

12

specifically noted that he "considered the evidence from the entire period," which would include any medical evidence or other records from 2022, "in evaluating the claimant's claim." (Tr. 12; *see also* Tr. 16–18 (discussing records from May and June 2022)). In other words, the ALJ's determinations at steps two, three, four, and five of the sequential process, and his RFC assessment, all apply to the entire time period, including 2022. Accordingly, remanding this case so the ALJ can reconsider his step one determination for 2022 in light of the Earnings Record Information would serve no purpose.[4] As this Court and the Sixth Circuit have repeatedly held, where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion)).

Accordingly, the Court finds Plaintiff is not entitled to relief under sentence six of 42 U.S.C. § 405(g). Plaintiff's request for relief will be denied in this regard.

## C.      Sentence Four

Plaintiff also moves for relief under sentence four of 42 U.S.C. § 405(g). As relevant to sentence four, Plaintiff argues the ALJ (1) "did not adequately account for Plaintiff's testimony" regarding pain and related limitations; (2) "improperly evaluated Plaintiff's credibility concerning pain and functional limitations"; and (3) "relied on an incomplete record, potentially including falsified or inaccurate medical reports, which misrepresented Plaintiff's condition." [Doc. 13 at Page ID # 707]. The Commissioner contends the ALJ properly considered Plaintiff's testimony and other subjective allegations regarding the nature and extent of his limitations as well as the medical opinion evidence. As a result, the Commissioner contends, the ALJ's RFC assessment

---

[4] Plaintiff has not disputed that, during his consultative exam held June 17, 2022, he told the examiner he "is currently doing web design, but he does not know how many hours he works per week." (Tr. 635).

and ultimate decision to not award benefits is supported by substantial evidence and is not

inconsistent with applicable standards.

### 1.    Subjective Symptoms

After identifying Plaintiff's RFC, the ALJ wrote:

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR[5] 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c.

(Tr. 14). The ALJ proceeded to describe the requirements of 20 C.F.R. § 416.929 and SSR 16-3p

in more detail and then found the following regarding Plaintiff's subjective complaints about his

symptoms:

At the hearing, the claimant testified he is unable to work secondary to back and joint pain. He stated he generally lies down most of the day. He reported he can lift a gallon of water. The claimant testified he has difficulty walking due to hip and back pain and typically uses an electric cart at the grocery store. He reported he also experiences right arm weakness and pain. The claimant maintained he can stand for only 10 to 15 minutes, walk for only 10 to 15 minutes and sit for 2 to 3 hours, after which he has to stand due to back pain. He stated he does not take pain medications. He denied that he has any other problems that prevent him from working.

While the claimant's hearing testimony has been carefully considered, the medical evidence of record indicates that the claimant is not as limited as he has alleged. The medical record indicates that the claimant's radiological studies have been relatively unremarkable. In October 2019, the claimant was evaluated by consultative examiner Linda Glaser, M.D., Ph.D., who noted the claimant reported back pain but that he was guarded throughout the examination and not cooperative, as he exerted minimal effort. She noted that the claimant ambulated with a slow gait and used crutches. She stated the claimant was unable to perform a tandem gait or stand on his heels or toes. She also noted she was unable to conduct a motor examination due to the claimant's inability to follow commands secondary to reports [of] back pain. Nonetheless, she noted the claimant's strength appeared normal in all extremities. Even though she noted she was unable to perform a complete examination based on the claimant's reported pain and inability to follow

---

[5] Social Security Ruling

14

commands, Dr. Glasser opined the claimant could perform a reduced range of medium [exertional] level work and that the use of an assistive device was questionable. (Exhibit 2F).

March 2020 x-rays of the cervical, thoracic and lumbar spines revealed reversal of the cervical lordosis but otherwise revealed normal disc height at each level and no abnormalities. The claimant was noted to demonstrate full range of motion of the cervical and lumbar spine at that time. (Exhibit 3F). April 2020 treatment notes indicate that the claimant demonstrated reduced (3/5) lower right extremity strength and sensation and spinal pain. However, the claimant otherwise demonstrated full strength throughout. The claimant was noted to be using crutches at that time but there is no indication they were prescribed or recommended by a treating provider. (Exhibits 4F and 5F). A May 2020 lumbar MRI revealed only mild degenerative changes in the lower lumbar spine with no significant spinal canal stenosis or neural foraminal narrowing. (Exhibit 7F).

In June 2020, the claimant was seen for back pain, and he was noted to ambulate with an antalgic gait and was unable to perform heel/toe walking. The claimant also demonstrated reduced range of motion of the lumbar spine with pain but had negative straight leg tests bilaterally. The claimant also exhibited full strength (5/5) and normal sensation. (Exhibit 9F). A January 2021 x-ray revealed minimal lower lumbar facet joint degenerative changes. (Exhibit 11F).

The claimant was evaluated by consultative examiner Sheila Kourakos, FNP-C, in January 2021. The claimant reported he can dress and bathe himself independently. He stated he can cook and prepare meals independently. He reported his parents shop for groceries because his movement is limited by pain, and he reported minimal cleaning of his room, such as taking out the trash. He reported he plays the guitar for his hobby while reclined. The examiner noted the claimant was able to stand from the chair but was slow and careful while grimacing. The claimant was able to walk to the examination table without crutches but with an antalgic gait. The claimant was able to touch his thumb to his fingers on his bilateral hands and make a fist simultaneously. The claimant had difficulty bending down but was able to dress himself independently. The claimant demonstrated full (5/5) strength bilaterally. He was able to pick up a coin and an elastic band, without difficulty. The claimant was able to tandem walk, walk on his heels and toes, hop, bend and squat. The claimant had a positive straight leg test raise at 30 degrees in the supine position, but he otherwise had a negative seated straight leg raise test. He demonstrated 4/5 motor function in the upper extremities and 4/5 in the lower extremities with no spasticity. The claimant demonstrated normal range of motion of the neck with the exception of slightly decreased rotation to 50 degrees. The claimant had decreased forward flexion and extension of the spine with some pain with lateral flexion and rotation of the hips. Sensation was intact throughout except the right lower extremity with use of light touch and tactile monofilament. (Exhibit 12F).

15

February 2021 treatment notes reflect that the claimant reported ongoing pain of his back and right leg. He exhibited full (5/5) strength throughout with slight giveaway weakness on the right arm and the right leg. The claimant demonstrated intact sensation. The claimant's right lower extremity EMG study was normal. (Exhibit 13F). August 2021 treatment notes indicate that the claimant continued to report right thoracic and right hip pain. He stated walking was not bearable. The claimant reported he spends most days reclined. The examining physician noted the claimant had been referred for physical therapy but had not yet gone. (Exhibit 15F). A thoracic MRI from September 2021 was normal. (Exhibit 15F).

At a consultative examination in June 2022, the claimant continued to report back pain, but indicated he was currently working in web design. He appeared with crutches, which he stated [he used] when ambulating, and he stated they were prescribed to him in 2016. The claimant demonstrated slightly reduced 4.5/5 strength of the right lower extremity and some pain with straight leg raise testing on the right. The claimant demonstrated reduced range of motion of the spine and ambulated with a slow gait and favored the right lower extremity. The claimant had some moderate balancing difficulty with tandem walking. The claimant maintained he could not perform single leg stand on the right due to back pain, but he was able to perform it on the left. He was unable to heel/toe walk due to back pain but he was able to squat two-thirds to the way on the floor while holding the examination table. Sensation was intact in all four extremities with only slightly decreased sensation in the right foot. The consultative examiner assessed the claimant with back pain. (Exhibit 17F).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 15–17).

After this lengthy discussion of Plaintiff's allegations and the medical record, the ALJ evaluated the medical opinion evidence from the consultative examiners: (1) Linda Glaser, M.D., Ph.D. who performed a physical consultative exam ("CE") in October 2019, Exhibit 2F; (2) Sheila Kourakos, FNP-C, who performed a physical CE in January 2021, Exhibit 12F; (3) Arthur Stair, III, M.A., MBA, SPE, who performed a psychological CE in May 2022, Exhibit 16F; and (4) Robert Blaine, M.D., who performed a physical CE in June 2022, Exhibit 17. The ALJ also

16

evaluated the medical opinion evidence from the State Agency Disability Determination Services ("DDS") consultants, who reviewed Plaintiff's medical records but did not examine him: (1) B. Harris, M.D., who issued a disability determination on November 13, 2019, Exhibit 2A; (2) Dorothy Leong, M.D., who issued an additional disability determination on February 15, 2021, Exhibit 4A; and (3) James M. Lewis, M.D, who performed a reconsideration disability determination on July 14, 2022, Exhibit 6A. The ALJ also stated that he reviewed and considered the opinions of Plaintiff's mother and stepfather (Tr. 18).

Plaintiff contends the ALJ erred in his evaluation of Plaintiff's symptoms. In particular, Plaintiff challenges the ALJ's statement, "the claimant maintained he can stand for only 10 to 15 minutes, walk for only 10 to 15 minutes and sit for 2 to 3 hours[.]" [Doc. 13 at Page ID # 708 (citing Tr. 15)]. Plaintiff argues: "The ALJ wrote 'stand' but it should say 'lie down and rest'." [Doc. 13 at Page ID # 708]. More generally, Plaintiff argues the ALJ failed to adequately consider his testimony regarding his functional limitations and pain.

RFC is the most a claimant can do, not the least, despite the combined effect of all limitations. *See* 20 C.F.R. § 404.1545(a)(1); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009). An ALJ develops the RFC based on all relevant evidence, including the claimant's subjective statements about his or her limitations and medical opinion evidence. *See* 20 C.F.R. § 416.945. Further, the ALJ is only required to assess those limitations he or she finds credible. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." (citation omitted)); *see also Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) (finding

17

no error where ALJ "excluded evidence of Justice's mental limitations because the ALJ Found that evidence was not credible.").

The Court has carefully considered Plaintiff's arguments and statements regarding the ALJ's consideration of Plaintiff's subjective symptom reports and finds Plaintiff has not shown any harmful error that would justify remand in this regard.

Contrary to the suggestion in his brief, Plaintiff did indeed testify that he had the capacity to stand for "ten to 15 minutes max," which Plaintiff qualified by adding that his "body would be screaming," but he could "do that." (Tr. 85). Regarding his ability to walk, Plaintiff testified "ten to 15 minutes is—is about the max I can do." (Tr. 85). Plaintiff also testified he could sit for "two to three hours" before his back pain became impossible to ignore (Tr. 85–86). Moreover, the ALJ specifically acknowledged Plaintiff's testimony that he "generally lies down most of the day," and he is "unable to work secondary to back and joint pain." (Tr. 15). The ALJ also specifically acknowledged that in August 2021, Plaintiff reported to one of his treating providers that he "spends most days reclined." (Tr. 16). In other words, the ALJ did not overlook or ignore this testimony and other evidence from Plaintiff. Rather, the ALJ considered it and found it was not entirely consistent with the rest of the record, including "relatively unremarkable" imaging studies from October 2019, March 2020, May 2020, and January 2021, numerous exam findings reflecting full or only slightly reduced strength and normal or slightly reduced ranges of motion, and assessments from Plaintiff's consultative examiners (Tr. 15–17). The ALJ also noted Plaintiff was referred to physical therapy in August 2021 but did not go (Tr. 16; Tr. 621–22).

Nor the did the ALJ fail to provide "specific reasons" for his decision not to fully credit Plaintiff's subjective description of his symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). The ALJ's analysis of Plaintiff's subjective complaints is not limited to the paragraph

Plaintiff cites; rather, as set forth above, the ALJ cited evidence throughout the decision that the ALJ found was inconsistent with Plaintiff's extreme allegations. *See Brecheisen v. Comm'r of Soc. Sec.*, No. 1:23-cv-9, 2023 WL 4561435, at *9 (W.D. Mich. July 10, 2023) ("The ALJ's decision, which is to be read as a whole, shows that the ALJ discussed the pertinent considerations from the applicable regulation throughout his analysis of Plaintiff's subjective symptoms, including Plaintiff's testimony about his symptoms, the medical evidence concerning his treatment, his daily activities, the objective testing, and the opinion evidence." (citations omitted)). Respectfully, Plaintiff has not demonstrated that the ALJ's reasoning is not supported by substantial evidence.

Moreover, the ALJ did not completely reject Plaintiff's description of his symptoms. For example, the ALJ specifically noted that, although Plaintiff's "radiological studies have been generally unremarkable," he would assess additional limitations in Plaintiff's RFC to account for "the notations of the claimant's slightly reduced strength and pain symptoms." (Tr. 19).

The foregoing discussion reflects the ALJ properly considered relevant factors and evidence when determining whether to credit Plaintiff's subjective complaints about his conditions. *See* 20 C.F.R. § 416.929(c); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." (citation omitted)). Moreover, the ALJ provided "specific reasons for the weight given" to Plaintiff's subjective complaints, and the reasons are supported by substantial evidence. *See* SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). While the ALJ may not have addressed each and every factor in 20 C.F.R. § 404.1529 or piece of evidence in detail, the Court finds the ALJ's analysis is sufficient.

19

In other words, the ALJ properly evaluated Plaintiff's reported symptoms and complaints in a manner consistent with relevant SSA policies and regulations, including SSR 16-3p and 20 C.F.R. § 404.1529. Such evaluations are properly entrusted to the ALJ, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007), and Plaintiff has failed to show any harmful error in this regard. *See Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 194 (6th Cir. 2020) ("Given the deferential substantial-evidence standard, '[c]laimants challenging the ALJ's credibility findings face an uphill battle.'" (quoting *Nettleman v. Comm'r of Soc. Sec.*, 725 F. App'x 358, 360 (6th Cir. 2018))). While Plaintiff cites to evidence that tends to bolster his allegations and his overall claim of disability, an ALJ's decision is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). While the ALJ may not have addressed each factor in 20 C.F.R. § 404.1529 or every piece of evidence in detail, the Court finds the ALJ's analysis is sufficient.

### 2. Medical Opinion Evidence

Plaintiff also contends the ALJ erred because the ALJ did not address "material inaccuracies" in the medical opinion evidence, when such inaccuracies "overstated Plaintiff's capabilities." [Doc. 16-1 at Page ID # 759]. Plaintiff emphasizes that because he was proceeding pro se, the ALJ had a "heightened duty" to develop the record, including "Evidence regarding apparently inconsistencies in consultative reports." [*Id.* (citing 20 C.F.R. § 416.912(b)].

Plaintiff had four consultative exams, all of which appear to have been performed at the behest of the SSA. *See* 20 C.F.R. § 416.912(b)(2) ("Obtaining a consultative examination. We may ask you to attend one or more consultative examinations at our expense. . . . Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources."). Accordingly, Plaintiff does not contend further exams should

20

have been required but rather that two of the exam reports contain alleged inaccuracies or inconsistencies which the ALJ should have addressed—Dr. Glaser's October 2019 CE report (Tr. 411–16) and Nurse Kourakos' January 2021 CE report (Tr. 458–63). Plaintiff contends that the ALJ's "[r]eliance on these reports without development renders the decision unsupported by substantial evidence." [Doc. 16-1 at Page ID # 759].

Plaintiff takes issue with Dr. Glaser's note that Plaintiff is "guarded and not cooperative" (Tr. 413). However, the ALJ did not rely on this aspect of Dr. Glaser's opinion in assessing Plaintiff's RFC. The ALJ clearly stated that he relied on Dr. Glaser's observation that Plaintiff demonstrated full strength during the exam (Tr. 17). In addition, the ALJ found Plaintiff was more limited than did Dr. Glaser. Specifically, the ALJ assessed lighter exertional capabilities and a sit/stand option for Plaintiff "due to the claimant's reports of pain and Dr. [Glaser's] observation that the claimant used crutches and ambulated with a slow gait[.]" (Tr. 17). The ALJ noted that the additional limitations were supported by the record, "even though" Dr. Glaser attributed them "to the claimant's poor effort" (Tr. 17). In addition, earlier in the decision, the ALJ noted that Plaintiff "has routinely exhibited cooperation, except for the physical consultative examiner's notation that the claimant demonstrated minimal effort." (Tr. 13). The ALJ went on to state that Plaintiff "otherwise has exhibited no significant difficulty interacting and normal speech," and that "a second consultative examiner noted the claimant was cooperative." (Tr. 13 (citing Exhibit 12F)).

Plaintiff also takes issue with the ALJ's consideration of Nurse Kourakos' CE report. He argues that Nurse Kourakos "reported in January 2021 that Plaintiff could walk on heels and toes and even hop, which Plaintiff could not and cannot perform due to conditions including severe osteoarthritis and degenerative disc disease, which may have misrepresented Plaintiff's condition." [Doc. 13 at Page ID # 709]. The Court notes this particular exam finding is worded differently

21

from the others in Nurse Kourakos' CE report. Regardless, as with Dr. Glaser's opinion, the ALJ found Nurse Kourakos' opinion "generally persuasive" (Tr. 17), and specifically credited her finding that Plaintiff has limitations working at heights "due to limited mobility" and limitations regarding working around heavy machinery "due to the claimant's reports of medical marijuana [use]," (Tr. 17). Plaintiff does not challenge the ALJ's assessment of these limitations.

The Court is not persuaded by the Commissioner's argument that Plaintiff waived any argument regarding these CE reports by failing to raise the alleged inconsistencies or inaccuracies during the administrative hearing. The Court agrees, however, that the ALJ clearly addressed the factors of supportability and consistency when weighing the medical opinion evidence, and that Plaintiff has not shown any harmful error in the ALJ's consideration of Dr. Glaser or Nurse Kourakos's opinions. *See* 20 C.F.R. § 404.1520c (listing factors an ALJ is required to consider in evaluating medical opinion evidence); *see also Jones v. Berryhill*, 392 F. Supp. 3d 831 (M.D. Tenn. 2019) ("Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate."). Nor has Plaintiff demonstrated any harmful error with the ALJ's consideration of these medical opinions and the alleged inconsistencies or inaccuracies. As the Commissioner further argues, the ALJ assessed an RFC that is more restrictive than assessed by Dr. Glaser and Dr. Leong, which incorporated the additional environmental limitations based on Nurse Kourakos's CE report, and the sit/stand option based on the medical evidence and Plaintiff's subjective description of his symptoms.

The record and the ALJ's written decision indicate the ALJ properly evaluated Plaintiff's alleged symptoms, weighed the opinion evidence, and considered all of the evidence in the record to arrive at a well-reasoned RFC. In addition, the written decision reflects a "logical bridge

22

between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted).

**D.      Conclusion**

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001), this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 587 U.S. at 104). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported her conclusion and why she considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported and explained. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

**V.      CONCLUSION**

Accordingly, it is **ORDERED** that:

> (1) Plaintiff's request for relief [Doc. 13; Doc. 16-1] is **DENIED**;
>
> (2) the Commissioner's request that the final decision denying benefits be affirmed [Doc. 15] is **GRANTED**; and
>
> (3) this case is **CLOSED**.

SO ORDERED.

ENTER:

/s/ _____
MIKE DUMITRU

23

UNITED STATES MAGISTRATE JUDGE

24